Court is now in session. All right, good morning, counsel. We've called up number 19-11364, Ricky Jones v. Lubbock County Hospital District. Mr. Johnston, you're up, sir, on behalf of Mr. Jones. Thank you. May it please the court, counsel, the issues in this case we believe are pretty straightforward. We believe that the district court got this summary judgment wrong because the district court failed to properly follow the procedures for considering a summary judgment motion. We believe that the district court did not construe the evidence in a light most favorable to the non-moving party, Mr. Jones, in this case. We also believe that the district court did not draw all reasonable inferences in favor of the non-moving party. Instead, it's our contention in this case that the district Jones' evidence. In this case, Mr. Jones contends that UMC violated the Americans with Disabilities Act by denying his request for reasonable accommodation. Mr. Jones is a respiratory therapist. He served as a respiratory therapist for 30 years at UMC. He suffers from a disability involving breathing difficulties, which has impacted him more as he has. He needed to use oxygen while at work. In 2016 and 2017, he made multiple requests for an accommodation by UMC to allow him to use a portable oxygen device. Mr. Johnston, let me ask you a question. I take a large part of your argument, maybe all of it, to be that Judge Cummings resolved fact issues with respect to whether requested accommodation was reasonable or not, meaning the use of the oxygen tanks, the oxygen apparatus that would have allowed him to use it while working. I think you make a cogent argument on that point, and I certainly look forward to the other side's responses to your argument. My question is, it seems possible to read the district court's order as resting on an alternative basis, and that is that Mr. Jones was offered an alternative position where the oxygen tanks would have been a problem, and yet he didn't accept the position. Is that an alternative basis for the summary judgment? If so, what is your argument about how Judge Cummings erred as to that ground? I do not believe that that was an alternative basis for the summary judgment. I believe that was an issue part of UMC's position on mitigation of damages in this case. I do not agree that that was a basis for the summary judgment. I think on that issue, we're talking about pretext and termination. I'm not so sure. Would you agree with me that, obviously, the defendant is required to offer reasonable accommodation under the law, but the accommodation does not have to be the one that's requested by the plaintiff? Is that the law? That is correct. Okay. So, wouldn't an alternative position be a reasonable accommodation, an alternative position where the oxygen tank, whether it's bulky or not, just wouldn't be an issue? I do not believe it would be a reasonable accommodation to have a person change his job or change his career. He was a respiratory therapist, and for him to all of a sudden have another position within the business that's not a respiratory therapist, I think, would be the heart of a discrimination case, forcing him to change his job when he can perform the essential functions of his job with this accommodation. Well, let me ask you this. Is the record uncontested that at some point during this process, Mr. Jones was offered a job as I believe it was an HUC, some sort of alternative job, that he was offered it and that he refused it? I believe the record is contested on that point, Your Honor. How is that contested? Mr. Jones put forth in his declaration that he applied for a number of jobs at UMC and that he was not granted interviews, he was not given any of those positions. Okay. Thank you. He was offered the position that Judge Duncan's talking about, right? The HUC, the admin position, I guess. I believe that he was not. I understand that he was, I think he challenged that in his declaration. I believe that he was, and I could be wrong on that, but he did testify and he put in his declaration that he did apply for a number of jobs within the department or within the university that he was not allowed to pursue. But I think, again, my point on a disability case is having you change your career would not be a reasonable accommodation. Okay. Thank you. I mean, we can certainly look at the evidence and see if that's the case. Sure. Yeah, I think our position in this case is that under the ADA, an employer discriminates against an employee if the employer fails to make a reasonable accommodation. Unless the employer can establish that it'd be an undue burden on its business, and I think the evidence in this case clearly shows that Mr. Jones asked for multiple times a reasonable accommodation to be allowed to use a portable oxygen device. The defense at UMC, and I think just by denying that, by refusing that accommodation, that constitutes discrimination under the Americans with Disabilities Act. Well, is this sort of, so there's two claims, right? There's a discriminatory discharge claim and there's a failure to reasonably accommodate claim. Those are two different claims, right? That is correct. However, I do believe that the discharge in this particular case would go to the issue of damages on the reasonable accommodation case. In other words, I know that the district court in this case applied this termination, this pretext argument as a basis for its decision. I believe the district court was wrong to do that. I don't think pretext applies in this case because this is a case that involves direct evidence of discrimination. You know, the court's aware that under the Americans with Disabilities Act, the denial of a reasonable accommodation request constitutes discrimination under that act. You're saying, I think, it seems like what you're saying is that we don't get to the burden shifting framework here with respect to the discharge issue? That is correct. I don't believe we should because I believe there is direct evidence of discrimination. Where is the direct evidence of discrimination? There is direct evidence of discrimination. Therefore, we don't reach this shifting burden and it would simply go to the measure of damages. In other words, Mr. Jones does say his termination related to part of his damages and that he's entitled to lost wages. But if the UMC can establish that they had a basis for firing him, then that would just end his damages at that point. He wouldn't be entitled to lost wages. I think it goes to a measure of damages. I understand that your view is that you could prove a case that he was discharged because of his disability and not because of the gossiping issue. But where is the direct evidence of discrimination that would take us completely out of the burden shifting? Well, under the Americans with Disabilities Act, the denial of a reasonable accommodation constitutes discrimination under the act. Therefore, just by denying it and they acknowledge that they denied it. I mean, they say it was an undue burden or undue hardship, but that is direct evidence of discrimination. Just the simple denial of his request for accommodation. I mean, that's why I asked whether the two separate claims because as I understood it, maybe I'm wrong, that there was a claim that he was not given a reasonable accommodation. I get that. And there was a claim that he was discharged because of his disability. And the response to that is no, he was discharged for a non-discriminatory reason, a gossiping thing. And then the idea would be, well, it was a pretext. But I thought those two were separate claims. In our original complaint, we had alleged the two as separate claims. As we've gone through the case and as I did the response to the motion for summary judgment preparing for the appeal, I believe they should be part of the same claim. However, I do also believe, as you noted, is that under the shifting burden analysis, I believe that there was sufficient evidence of adverse employment action. You know, he was denied a reasonable accommodation. He felt like he was forced to resign. And ultimately, he was fired. They had a legitimate non-discriminatory reason. He engaged in gossip. And then I believe he produced sufficient evidence to show that that reason was a pretext. He denied that he engaged in gossip that violated the policy. And we put forth the evidence in there. So, I think we're there either way. I think the summary judgment is incorrect on the reasonable accommodation grounds. And as I've gone through this process, I believe that the wrongful termination is really a part of the damages of the reasonable accommodation. However, if it is considered a separate claim, I believe there's sufficient evidence in this case to preclude a summary judgment. At least, let it go to a jury and let a jury decide. That would require, as I understand it, and tell me if I'm wrong, that would require us to find that there's evidence in the record that creates an issue as to whether the reason given for the firing was a pretext. That is correct. That's what we need. We need to look at the record. And what's your best evidence that there's evidence that shows the gossiping? Because, see, I thought, tell me, I mean, I thought he admitted, sure, I was gossiping, but lots of people gossip. He said after the fact that a lot of people gossip. But what happened in this case, he also stated in his declaration that he did not violate a policy on gossip. He was, the evidence construed in his favor shows that the gossip involved a text message. He was off duty at the time he sent the text message. He wasn't at work. He was at home. He was off duty. He sent the text message to a former employee, asking if that former employee had heard that another former employee had recently been fired. Would doing that violate the policy? You know, sending to a former employee as opposed to a UMC didn't put forth any evidence to show a policy that said that while you're off duty, you can't text or communicate with former employees. And I don't believe there's any, I don't believe there's sufficient evidence to suggest that texting a former employee about, hey, did you hear that so-and-so got fired, that that would be gossip under any of the policies that I've seen put forth in this case. And of course, he denies that that violated policy. Is there evidence in the record that he had been counseled previously on the gossiping policy? Yes. In August of the preceding year, this happened in February. In August of the preceding year, he had been counseled for gossiping. It wasn't a similar type of event. He was on duty at the time and it said something. And I don't remember exactly what it was, but he did receive and acknowledge that he received a counseling statement for that. Okay. And so I think I go back to the reasonable accommodation because that's really the heart of our case is the denial of the reasonable accommodation request. And I think it's important to note that in this case, Mr. Jones didn't ask for UMC to furnish him anything to do his job. He didn't ask them to change his schedule. He didn't ask them to give him light duty. He didn't ask them to give him assistance for anything on his, for him to be able to do his work. He didn't ask UMC to change his duties at all. He just simply asked to be allowed to use a portable oxygen device. And I think it's important to note, UMC claimed that this device was burdensome, but Mr. Jones testified or declared that it wasn't in a way, it wasn't burdensome. It didn't get in a way. We're not talking about a propane tank that you would use on your gas grill. We're not talking about the oxygen tanks that welders would use. We're talking about it. Let me ask you this. So we're talking about sort of one of these portable deals that somebody can hang on their shoulder. I mean, like a woman, if it was like a shoulder bag, is that what you're talking about? Some kind of apparatus. And then the second part of my question is, do I have a recollection that at some point in this was, and then the third part is, if that's the case, did that termination of that experience, did that occur because of a problem on the worksite or what ended the four days or whatever that was? Yes, sir. The portable device, yes, it hangs on your shoulder and it's like a cylinder that would hang up in front. That would be the portable device. Mr. Jones is a relatively thin person. If he was 20, 30 pounds overweight, that would actually get in the way more than this particular device got in the way of. With regard to, yes, when he asked for the reasonable accommodation in August of 2016 initially, he was allowed to finish that work week wearing the device. And no, there were absolutely no, there were no problems with him wearing the device and completing his work at that time. He was able to finish that week without any difficulties whatsoever. And I will, I have 30 seconds left. I'll yield the balance of that time back. All right. Okay. Thank you, sir. All right. We appreciate it. All right. We'll shift gears. Mr. Dennis. May I please escort counsel? My name is Don Dennis and I represent the Lubbock County Hospital District. It's Appalachee in this case. You may refer to the Appalachee as the hospital or the hospital district or EMCU, which is the way it's commonly referred to around Lubbock where this happened. The hospital, the Appalachee is a public county hospital district. It has a hospital operation known as University Medical Center. And Mr. Jones worked as a respiratory therapist with the hospital district for many years. There are a couple of aspects to this case. Started off as an age discrimination case, a disability termination case, and as a failure to accommodate case, the age portion of it has been abandoned. Significantly, it is not pleaded as a constructive discharge case and was not a first amendment case. Chronology of the facts in general is important to the understanding. I do believe that- Let me cut to the chase because I mean, we can certainly read the chronology in the briefs. I guess my initial inclination when I read all this was, if this is coming down to a dispute about how burdensome the oxygen tank device really is, then I would think we got a problem because this was dealt with on summary judgment. And if there's a fact issue about, well, this was a really big tank or that this would really interfere with the duties on the one hand or on the other hand, no, this is not a big deal at all. And he could use it, no problem. And in fact, he used it for four days. And it sounds like a fact issue if that's what this case is really all about. I mean, what's your view of that? Well, there are two issues. First of all, I believe the issue doesn't really relate to burdensomeness. I believe it really relates to reasonableness. And as you may be aware, the Americans with Disabilities Act contains several different provisions which seem to interact. One is the requirement that reasonable accommodation be provided to a person with a disability. Another is that an employer is not required to provide accommodation which is an undue burden. A third is that if the accommodation would provide a direct threat or the employee's employment would provide a direct threat to a third party or to the employee, then the accommodation doesn't have to be provided to allow the employee to do the job. The question of reasonableness varies in each case. The most significant aspect of reasonableness in this case is not the cost to EMC. I believe that Mr. Jones provided his own equipment, and therefore cost is not an issue. It's the aspect of priority and the risk associated with having Mr. Jones provide direct patient care to patients needing respiratory therapy with the equipment. The judgment and opinion of the supervisors who have a great amount of experience in operating respiratory therapy departments is that it would not be reasonable because of a couple of things. First, they believe it would get in the way of his doing his job. That was their judgment. Second of all, it... Well, let me stop you there and then go back to the four days or whatever it was when he had it and was, you know, presumably doing his job. I mean, was there something in the record to show that, you know, like during that four-day period that's what, you know, was support for the hospital saying, no, you know, this thing is in or patient complaint or something, you know, on his face it looks like he did four days and, you know, nothing happens. On the other hand, what's the risk that is attended? We're not trying to get into the employer's decision making, but you say, is it the risk to the patient or he has oxygen and he's trying to help a patient who needs oxygen? I mean, what is it? Let me address first of all the four-day issue. I'm not sure the evidence. I'm not sure there's any specific evidence in the record about how he did during those four days. I think the decision was made that looking forward that the employer was uncomfortable with allowing him to use the equipment in direct patient care. And there are a number of aspects of that. One aspect is they thought it could get in the way. It hangs around the shoulder, it bangs into things, could get in the way. I believe Mr. Johnson said that, or you may have said, your honors may have said, that it sits in front of the person. And certainly, it could get in the way. That's an aspect of it. But I'll- Well, Mr. Dennis, so when you say it could get in the way, I certainly am in no position to doubt you that it could. But would you agree with me that if there were evidence in the record that showed that it possibly wouldn't get in the way, then we've got a fact issue on whether that combination is reasonable or not? I would disagree, your honor. Why is that? You're talking about putting a person out on the floor and allowing them to maintain patient care on the floor indefinitely. The fact that an accident didn't occur in four days doesn't mean that it's necessarily safe. It doesn't mean that an accident couldn't occur. It doesn't mean it would not get in the way. It meant that in four days, nothing happened over it. There may not have been an extreme situation where a patient was involved in a delirious event. It may not have been a situation where a number of care involved a situation where, again, you have a delirious patient. You might grab the cannula or his oxygen tubes and pull them out. The problem with oxygen and supplemental oxygen is that it's used in most cases because people have low blood oxygen. And people who have low blood oxygen, and if their equipment malfunctions, the symptoms are confusion and dizziness. And you don't want a confused person trying to provide patient care in a setting with a hospital. The first thing, the most important thing in a hospital, and it makes this case different than a lot of others, is not just an issue of whether an employer is inconvenienced here. It's an issue of whether proper patient care can be maintained. And in that sense, I suggest that some deference should be allowed to the employer in making that decision. If you think back about a common experience, you don't see police officers doing their job carrying supplemental oxygen. Not police, not patrol officers. You don't see EMTs doing it. You don't see none of the persons in this case, including Mr. Jones, knows of any respiratory therapist working patient care jobs using supplemental oxygen. Counsel. Mr. Jones, I'm sorry. Mr. Jones actually, I mean, he testifies, right, that he didn't think it would be a problem and it wouldn't get in his way and that he could actually complete a shift without the oxygen. And then you've got this four-day period where you wore the oxygen. Well, isn't that enough for him to meet a prima facie case at least, or at least to create a fact issue? Because it sounds to me like you're describing a fact dispute between what the hospital contends and what he contends. Well, Your Honor, I have to say that that was my first impression also. But as I reviewed it, the fact that if somebody goes for a driver's license and they've got a disability, the fact that they drove and been driving for five years and not had an accident may be significant. The fact that they've driven for four days with bad asset that's uncorrected and haven't had an accident doesn't mean they should be allowed to do that in the future. But, counsel, is his evidence competent such to create a fact issue that defeats somebody? These are all things that tend to go to credibility, do they not? Your Honor, on their face, they are self-serving. They are fairly general. He does make the statement. He does. There is evidence in the record based on him that, in his view, it doesn't affect his ability to do the job. I don't believe he touched on in his affidavit whether it posed a patient care risk, as I recall. The declaration is fairly extensive and to some degree is specific regard to the type of equipment, but I don't believe it is tied directly to patient care risk from the standpoint of his condition and the ability of patients to get in this way. I don't believe that the employer's affidavits speak of direct events that could cause patient care, but I might be wrong about that. But even if there is an issue, a fact as to whether it would be reasonable to allow this accommodation, and again, I suggest under the circumstances, what might be reasonable for somebody pushing a wheelbarrow may not be reasonable for somebody taking care of a patient in an extreme situation. Mr. Dennis, at the beginning, I asked Mr. Johnston about what to make of the district courts. I'm looking at the order. It's a paragraph of the order that talks about that Mr. Jones was offered at least one other position, an alternative position in the hospital. Is that an alternative basis for the district court's order? What do you make of that part of the district court's order? That's just about where I was about to go, Your Honor. That is an alternate basis for the district court's order. I think it's a correct and probably a clearer question and more clearly presented. When a person asks for accommodation that has a disability, and disability is not disputed in this case for post-December judgment, when a person has that, they are entitled to a reasonable accommodation. They are not entitled to the accommodation of their choice, as the court said, and they may be transferred to a different position. They may be transferred to a different position with a lower salary. They may be transferred to a position they don't want. What is supposed to occur is an interactive process between the employer and the employee in an attempt to find a way to accommodate the disability. That occurred in this case. There was discussion about Mr. Jones taking a position as an HUC, which is a health unit clerk. It's a clerical job, and he could do that job with the equipment without any issue. What Mr. Jones decided to do was not to pursue that opportunity, and that's in the record. I'd like you to respond to what Mr. Jones said, which is that's not a reasonable accommodation because it would require him to basically change his career. Your Honor, that brings me to another issue. I did find a case over the weekend that discusses these issues. In fact, it's not cited in my brief. It's an unpublished opinion of the Fifth Circuit, but it is published in the Federal Appendix. The case is Jackson v. Blue Mountain Production Company. It's 761 Federal Appendix 356. It's a decision of a panel of the Fifth Circuit dated February 21, 2019. Well, Mr. Johnson hasn't had a chance to respond to that, I gather. Yes, that's correct, but I can go ahead and address it at this point. More to the point, if it's a 2019 case, why isn't it in your brief? Your Honor, I tried finding cases that relate to a health care worker with supplemental oxygen and did not find them. This case does not deal with supplemental oxygen, although it does deal with a patient who had respiratory problems. In that case, it dealt with dust. Well, you're citing it for what proposition? That's what I was about to get into. It does discuss these issues. Well, I'm just trying to get to the nub. I'm not trying to chastise you, but it's a 2019 case, the same place it was in the Federal Appendix when you found it over the debris profile. So, if it's got some probative work, it would be helpful to have it in there or the side would have it. I mean, we're going to let you make your argument, but it's just, if you told me it was rendered last week, that would be a different deal. So, for whatever the point, go ahead and make it, and we'll give ample time for Mr. Johnson, but it's just a good deal if there's something you're arguing, you know, relatedly to get it to us ahead of time so we have time to thresh it out. But having said that, press on. I wish I had found it, but the logic of my search, what I was looking for, did not find it. But it does discuss the fact that a person with a disability is entitled to an accommodation, but not to the preferred accommodation, and he has no right to promotion or future job to which he will be assigned or to receive the same compensation as he received previously. In this case, it's very similar, and I wish I had found it before now. I admit that. The person quit instead of pursuing further attempts at accommodation, and the court held that he thereby deprived the jury of the opportunity to make a determination whether he had. But you have other cases you've cited to us for that proposition that, you know, the person doesn't have a right to get exactly the accommodation. So, you briefed that point. We have that. So, I mean, what does this case add differently than what you briefed to us on that point? I believe it. Factually, I looked for cases involving supplemental oxygen. I did not find any that I felt were relevant. This case does deal with a breathing problem, which I think makes it in a similar fact situation, and I just request the court look to the extent that it's possible. Judge Duncan was asking you whether or not there was an alternative holding by the district court here separate from the other claim, and I may have missed exactly what your response to his question. I think you said, well, I was just about to get to that, but I missed it. So, would you restate your response to Judge Duncan's question about whether there was an alternative reason given by the district court and how that frames what we have to do? Okay. I do believe there's an alternative finding. The district court found that there was an opportunity to look for other jobs, and in fact, the process began to look for the possibility of transfer to a position where the personal oxygen equipment would not be an issue. And that Mr. Jones chose not to follow that procedure and chose to go take time off, do some exercise, do some rehabilitation, so he could get into a position that he didn't need the oxygen. He returned to work without oxygen, then got hurt, and while he was on leave, he developed pneumonia, and according to his testimony on the 15th of March, he asked, can I use oxygen now? And they said no, and he said, I quit. He didn't go any further to attempt to work with UNC. Now, isn't that, I hear what you're saying, Mr. Dennis, but at that point, when he comes back, he had done some rehabilitation, he'd come back, he wanted to try the position, his regular position again, couldn't do it without oxygen. At that point, the alternative position was already filled. Is that right? I believe it may have been, but your honor- Of course, it was opened back at one point, but at another point, it was filled, so I don't know what to make of that. Well, they were talking about a hut position before he took off time to do some rehabilitation. He chose not to pursue that, not to pursue the position, other positions. He then came back to work and worked until he was injured on the job, then he took injury leave, then he got pneumonia, then he took FMLA leave, and then in March, he said, as the record shows, that he asked to come back. He asked for the accommodation again, and they said, no, we told you we're not going to allow you to use personal oxygen on the floors. At that point, he quit voluntarily. Seven days after he quit, he started stirring things up, and he was discharged from that. There's no evidence to show it was a pretext. The fact of the circumstance, why would you fire somebody for a disability after they've gone ahead and resigned their work? At that point, he chose not to pursue working with UMC to find another job or another type of accommodation, and essentially, he abandoned the interactive process at that point. All right. No, go ahead. I'm just about to wrap up unless there's some other questions. Go ahead. Go ahead. Okay. For the reasons stated in the brief, in the trial court's opinion, the district court's opinion, as well as the points made in the argument, we believe that the district court made the right call and that some of the judgment was proper and should be affirmed. Thank you. All right. Thank you, Mr. Dennis. Appreciate your briefing and your argument. All right. We're back to you, Mr. Johnston. You've reserved some rebuttal time. Yes, Your Honor. Thank you. Quickly, with regard to the issue that Mr. Dennis was talking about as far as in March of 2017, in March 2017, per the declaration by Mr. Jones, he asked for the accommodation, again, to be allowed to use the portable oxygen device. When his supervisor refused the request, he states in his declaration, at that time, because I was not going to be allowed to work, I had no choice but to give two weeks' notice of my intent to resign. I made the decision to resign because I did not want to be fired when my leave time expired. I did not want to lose my job, but I could not work without the accommodation. I used the time to apply for multiple jobs at UMC that I thought UMC might allow me to do with the portable oxygen device. I was not granted an interview for any of the positions that I applied for. I believe that testimony by Mr. Jones at least raises an issue of fact regarding the question of whether he worked with UMC or didn't work with UMC in order to find a new position. Mr. Johnson, as a result of those inquiries, Mr. Jones had been offered an alternative position and he had refused it. What result then? I believe, personally, that that would be an issue regarding mitigation of damages, and it would affect his damages claim because he had an alternative to go to work. I mean, I understand your answer on the damages. You may be right about that, but my question is, if he's offered an alternative position and refuses it, does that mean he was given a reasonable accommodation? He just turned it down. I don't have any law to support that one way or to answer that question one way or the other. It's my belief and my interpretation. My own personal interpretation of the ADA on reasonable accommodation is that you're not required, again, like I said earlier, to change careers if you can perform the essential functions of your job. I hear what you're saying, but the ADA in defining reasonable accommodation says that it can include job restructuring or reassignment to a vacant position. There seems to be some flexibility built into the ADA. I don't know what to make of this HUC position because the district court does say he was offered the position, but I also understand the point that, well, at the time he wanted to try to rehabilitate himself and be able to work at his regular position, and then when he came back to work and he found he was unable to do that, the alternative position wasn't available. And I don't know what to make of that, but I just don't see a lot of argument or case law as to that point. I agree. I guess my position on that would simply be in August, okay, you can't work without the, you know, you can't work with the oxygen. So he's like, okay, well, let me take some time off, do some therapy, some exercise. That seemed to work. He comes back to work. I don't believe that he should be penalized for taking that approach versus not accepting, you know, he wants to continue with this career that he's been doing for 30 years. I hear you. I have an entry question with respect to the four days that he worked with the tanks, with the tank, with the apparatus. Yes, sir. Where does that, does that issue, does that, does that evidence come from his declaration or does it come from somewhere else? It comes from his declaration. I believe it was in his deposition as well, but I know I use, we use the declaration to specifically address those issues that were actual sort of dimensions of the device. What do we have on that in the record? The device he wants to use. The, we don't have the actual measurements of the dimensions. It's a small cylinder is the way that he described it in his declaration. In his declaration also? Yes, sir. Okay. I'm not saying that's incompetent. I'm just saying, I just want to know where it comes from. But just on one final, one final point on that, on the issue with the jobs. Again, I would just remind the court that in March, when he did say, okay, I'm not going to be able to do my job. I have to submit my two weeks notice. He did at that point try to find a job within UMC that he could do with the portable device. So I think that at least raises a fact issue. Okay. So remind me, how long, how long had he worked there? 30 years. 30 years. As a, okay, as a respiratory therapist? Yes, sir. So it was just sort of in this latter period, 2015, 2016, I think something in the narrative said, I guess he had these issues, but he principally used the oxygen to sleep. And somewhere around 2016, 2017, he needed it otherwise. Was that right? Yes. He could work a day or two without the oxygen, but if he was going to work eight hours a day, five days a week or something like that, the wear and tear eventually would, by using the oxygen, he was able to complete those full workweeks. Yeah, yeah, yeah. No, I was just trying to complete the string in my head. He had been at that particular hospital district as a respiratory therapist for 30 years or whatever the period. And it's then in this span, 2015, 2017, where these issues crop in. Is that right? Yes, sir. All right. So when he resigned, whatever, I mean, I guess he didn't retire. So after 30 years, I mean, he just, he quit, right? I mean, basically, it's a termination after 30 years, right? Yes. Okay. All right. I mean, it's not germane to our disposition. I just try to get these things clear in my head, you know, that he had been working there as a respiratory therapist, doing the job, blah, blah, blah, for this lengthy period of time. And then sort of to the end is where we get, you know, this kind of scenario cropping up for good or real. Okay. I think we got it. Judge Duncan, any additional questions for you, the counsel? Judge Wilson, anything further for either one while we got them? All right. All right. Thank you, counsel. We appreciate your briefing and the oral argument, especially answering the panel's questions about this. We will deem the case admitted, we'll get into the record, and we'll get it decided as soon as we can. So appreciate both you in cyberspace. All is well, but have a good day and we'll excuse you. All right. Thank you. And Ms. Trice, thank you for all your help on this. I really appreciate it.